Entered on Docket March 9, 2018

Below is a Memorandum Decision of the Court.



Brian D. Lynch
U.S. Bankruptcy Court Judge
(Dated as of Entered on Docket date above)

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| In re: | **Chapter 7** |
|---|---|
| TRUNG NHAT PHAN<br>THUY HOANG VINH CAI | **Case No. 17-44563-BDL** |
| Debtors. | **MEMORANDUM DECISION** |

A hearing was held on February 14, 2018 on the Ch. 13 Trustee's Objection to Confirmation with Strict Compliance (the "Objection") (ECF No. 21). The Court has reviewed the Trustee's Objection, Trung Nhat Phan and Thuy Hoang Vinh Cai's (the "Debtors") Response (ECF No. 22) and the Debtors' Supplemental Response (ECF No. 24). The Ch. 13 Trustee Michael Malaier (the "Trustee") is represented by Matthew J.P. Johnson and the Debtors are represented by Ellen A. Brown. This dispute centers on whether priority unsecured claims should be deducted when calculating the liquidation value of the Debtors' estate pursuant to 11 U.S.C. §1325(a)(4). For the reasons stated below, the Court holds that priority unsecured debts should not be deducted to calculate the liquidation value. The Trustee's Objection is sustained.

**Below is a Memorandum Decision of the Court.**

### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I). The Court makes the following Findings of Fact and Conclusions of Law under Fed. R. Bankr. P. 7052 and Fed. R. Civ. P. 52. To the extent a Finding of Fact is a Conclusion of Law, or the converse, it is adopted as such.

### II. Findings of Fact

The parties do not dispute the key facts in this case. They agree that the Debtors have a bank account with a non-exempt value of $4,208.91 and that a hypothetical chapter 7 liquidation of the bank account would result in a chapter 7 Trustee fee of $1,052 (pursuant to 11 U.S.C. §326). The Debtors and the Trustee also acknowledge that the Internal Revenue Service has a priority unsecured claim in the amount of $2,561.11. The filed nonpriority unsecured claims exceed $80,000.

The Debtors calculate the liquidation value of their chapter 13 plan using the following equation: $4,208.91 (non-exempt bank account balance) - $1,052 (hypothetical liquidation costs) - $2,561.11 (priority unsecured IRS tax claim) = $595.

The Trustee argues that the Debtors may not deduct the IRS's priority unsecured tax claim of $2,561.11 when calculating the liquidation value of the estate. The Trustee calculates the liquidation value using the following equation: $4,208.91 (non-exempt bank account balance) - $1,052 (hypothetical liquidation costs) = $3,156.91 (which the Trustee has rounded down to $3,156). Under the Trustee's calculation of the liquidation value, the Trustee would distribute payments in the plan toward the liquidation value, first to pay priority unsecured claims and then pro rata to nonpriority unsecured claims. Under the Debtors' proposed liquidation value calculations, the liquidation value would only be distributed to the nonpriority unsecured claims. The local form plan, Local Form

13-4, (eff. Dec. 1, 2017), paragraph IX, which is titled "Liquidation Analysis Pursuant to 11 USC § 1325(a)(4)," provides: "[t]o obtain a discharge, the Debtor must pay the liquidation value or the total of allowed priority and nonpriority unsecured claims, whichever is less."

The Court finds that the nonexempt value of the Debtors' interest in the bank account is $4,208.91, and as a result, the hypothetical chapter 7 liquidation costs would be $1,052. In addition, the Court finds that for the purposes of determining liquidation value, the IRS has filed a proof of claim including a priority claim in the amount of $2,561.11.[1]

### III. Conclusions of Law

In order for a chapter 13 plan to be confirmed, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407 (9th Cir. 1994). One of the requirements for confirmation under §1325 is the "best interests of the creditors" test set forth in 11 U.S.C. §1325(a)(4):

"Except as provided in subsection (b), the court shall confirm a plan if –

> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

The "best interests of the creditors" test generates a liquidation value for each chapter 13 plan based upon the non-exempt equity in estate property that is available for a hypothetical liquidation. In *In re Messer*, No. BAP AZ-13-1215, 2014 WL 643712, at *3 (B.A.P. 9th Cir. (Ariz.) Feb. 19, 2014), the Ninth Circuit B.A.P. described the calculations

---

[1] The IRS has filed a proof of claim no. 5 in the amount of $2,683.03 and stated in its claim that the priority unsecured portion of the claim is $2,561.11. Neither party has raised any issues concerning the validity or extent of the IRS's claim.

- 3 -

**Below is a Memorandum Decision of the Court.**

that a bankruptcy court must perform when determining whether a debtor's plan has satisfied the "best interests of the creditors" test:

> "Two separate calculations must be performed in order to determine whether a debtor's proposed plan satisfies the best interests of creditors test under § 1325(a)(4). First, the bankruptcy court must measure the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim . . . .
>
> The second calculation under § 1325(a)(4) focuses on 'the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.' This measurement computes the sum that would be available to each unsecured creditor if a hypothetical chapter 7 liquidation of the debtor's assets were completed on the effective date of the plan. This sum is then compared to the first calculation. In order for the plan to be confirmed, the first sum – the chapter 13 plan amount – must be 'not less' than the second sum – the chapter 7 liquidation amount – as to each specific unsecured creditor. This methodology insures the unsecured creditors will fare no worse under chapter 13 than under chapter 7."

*Id.* at *3-4 (internal citations omitted). While the question of whether "priority claims" must be deducted to determine the liquidation value was not an issue in *Messer*, the Ninth Circuit B.A.P. noted that the test measures the amount that "would be available to each unsecured creditor" without making a distinction between priority unsecured creditors and nonpriority unsecured creditors.[2]

The Debtors' interpretation of §1325(a)(4) would require the Court to limit the phrase "allowed unsecured claims" to determine *only* the amount of value to be distributed to *nonpriority* unsecured claims, rather than "each allowed unsecured claim," which include priority unsecured claims such as the IRS's claim. Debtors implicitly ask the Court to add the limiting word "nonpriority" between the words "allowed" and "unsecured" in §1325(a)(4).

---

[2] The Court notes that the hypothetical liquidation costs include likely costs of a chapter 7 liquidation, including the costs of sale, capital gains tax, the chapter 7 trustee fee pursuant to 11 U.S.C. §326, and any chapter 7 Trustee's attorney's fees, but they do <u>not</u> include any chapter 13 attorney's fees. *See In re Goudreau*, 530 B.R. 783, 787 (Bankr. D. Kan. 2015).
- 4 -

**Below is a Memorandum Decision of the Court.**

that a bankruptcy court must perform when determining whether a debtor's plan has satisfied the "best interests of the creditors" test:

> "Two separate calculations must be performed in order to determine whether a debtor's proposed plan satisfies the best interests of creditors test under § 1325(a)(4). First, the bankruptcy court must measure the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim . . . .
>
> The second calculation under § 1325(a)(4) focuses on 'the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.' This measurement computes the sum that would be available to each unsecured creditor if a hypothetical chapter 7 liquidation of the debtor's assets were completed on the effective date of the plan. This sum is then compared to the first calculation. In order for the plan to be confirmed, the first sum – the chapter 13 plan amount – must be 'not less' than the second sum – the chapter 7 liquidation amount – as to each specific unsecured creditor. This methodology insures the unsecured creditors will fare no worse under chapter 13 than under chapter 7."

*Id.* at *3-4 (internal citations omitted). While the question of whether "priority claims" must be deducted to determine the liquidation value was not an issue in *Messer*, the Ninth Circuit B.A.P. noted that the test measures the amount that "would be available to each unsecured creditor" without making a distinction between priority unsecured creditors and nonpriority unsecured creditors.[2]

The Debtors' interpretation of §1325(a)(4) would require the Court to limit the phrase "allowed unsecured claims" to determine *only* the amount of value to be distributed to *nonpriority* unsecured claims, rather than "each allowed unsecured claim," which include priority unsecured claims such as the IRS's claim. Debtors implicitly ask the Court to add the limiting word "nonpriority" between the words "allowed" and "unsecured" in §1325(a)(4).

---

[2] The Court notes that the hypothetical liquidation costs include likely costs of a chapter 7 liquidation, including the costs of sale, capital gains tax, the chapter 7 trustee fee pursuant to 11 U.S.C. §326, and any chapter 7 Trustee's attorney's fees, but they do <u>not</u> include any chapter 13 attorney's fees. *See In re Goudreau*, 530 B.R. 783, 787 (Bankr. D. Kan. 2015).

"Interpretation of the Bankruptcy Code begins with an examination of its language." *In re Bay Area Glass, Inc.*, 454 B.R. 86, 89 (B.A.P. 9th Cir. 2011); quoting *Ransom v. FIA Card Services, N.A.,* 562 U.S. 61, 131 S.Ct. 716, 723–24, 178 L.Ed.2d 603 (2011). In *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), the U.S. Supreme Court instructed that when interpreting the Bankruptcy Code, if the language is unambiguous through its plain meaning, then no further interpretation of the court is needed. *Id.* at 534.

The Court concludes that the language of §1325(a)(4) is unambiguous with respect to the value to be distributed in a chapter 13 plan; it specifies the broad group of "allowed unsecured claims" to receive the value to be distributed under the plan. Priority claims for taxes are specifically referred to as "*allowed unsecured claims* of governmental units, . . . for – (A) a tax . . . ." 11 U.S.C. §507(a)(8) (emphasis added). The Debtors have provided no basis or reason for departing from the broad meaning of "allowed unsecured claims" in §1325(a)(4), which includes priority unsecured claims.

The Debtors cite *In re Trombetta*, 383 B.R. 918 (Bankr. S.D. Ill. 2008), where the Court only examined what *nonpriority* unsecured creditors would receive in a hypothetical liquidation. *Id.* at 924. In *Trombetta*, the ch. 13 trustee had avoided a lien on the debtors' automobile, resulting in a release of $5,700 in equity. *Id.* at 919. The ch. 13 trustee argued that all of the new value should be distributed to the nonpriority unsecured creditors, while the debtor argued that he had already paid a substantial portion of the priority unsecured claims, more than the liquidation value of the vehicle with the avoided lien, and that the trustee was in effect seeking to make the debtor pay twice for the liquidated value of the vehicle. *Id.* at 921. The *Trombetta* court agreed with the debtor, and concluded that priority unsecured claims allowed under chapter 7 must be deducted from the nonexempt equity to determine liquidation value. *Id.* at 923. In

*Trombetta,* the priority claims exceeded the nonexempt equity of $5,700, and therefore, nonpriority unsecured creditors would have received nothing in a hypothetical liquidation. *Id.* at 924.

The *Trombetta* court deducted priority unsecured debt along with hypothetical costs of sale and trustee fees to determine the liquidation value, which then was used to determine whether the plan paid the (nonpriority) allowed unsecured claims the liquidation value. The approach advocated by the Trustee in this case is to determine the liquidation value by deducting the hypothetical chapter 7 expenses, but not the priority unsecured claims, from the nonexempt equity, and from that liquidation value, calculate what would be distributed to each of the allowed priority and nonpriority unsecured claims, to see if the best interests of the creditors test is met.

*Trombetta* offers no rationale or discussion of why it deducts priority unsecured debt before applying the best interests of the creditors test to nonpriority unsecured creditors. The approach adopted in *Trombetta* has been used in a few other courts, but none of those courts analyze or discuss why priority unsecured claims are somehow different than nonpriority unsecured claims for purposes of the best interests of the creditors test. *See e.g.*, *In re Cannella*, No. 14-21398, 2015 WL 1208679, at *3 (Bankr. D. Kan. Mar. 12, 2015); *In re Cowger*, No. 13-71433, 2014 WL 318241, at *2 (Bankr. C.D. Ill. Jan. 29, 2014); *In re Jozil*, No. 9:09-BK-19555-ALP, 2010 WL 5559697, at *2 (Bankr. M.D. Fla. Oct. 1, 2010); *In re Sharp*, 394 B.R. 207, 212 (Bankr. C.D. Ill. 2008).

In this case, as in *Trombetta*, the practical result is the same. That is, whether the priority debt is deducted from nonexempt equity in the estate to determine the liquidation value (the Debtors' position), or is paid in priority from plan payments made to pay the liquidation value (the Trustee's position), still the priority unsecured claims are being paid in full and the nonpriority unsecured claims share the balance pro rata. And

that may be why *Trombetta* and the other cases do not spend much time analyzing the process.

But it does not always work out that way. Priority debt listed in the schedules is an estimate. Often if there is priority debt it is because tax returns have not been filed, or the IRS is challenging the debtor's return. Even when the returns are filed and there is no apparent dispute between the debtor and the IRS, the claim may come in different, which is what occurred in this case, albeit a very minor discrepancy (the debtor scheduled priority debt of $2,683.03, but the priority portion of the IRS's claim was $2,561.11). Liquidation values are listed in the debtor's original plan, and plans are often confirmed within 70 days of filing. But priority creditors have an extra 110 days to file their claims after the order for relief; the deadline for priority claims in this case is June 7, 2018, still three months away. Under the Debtors' proposed approach and *Trombetta*, they would use the scheduled priority debt as a deduction to determine the liquidation value. But if the priority unsecured creditor either does not file a claim or files a claim for less than what is scheduled, the Debtors would have received a deduction to their liquidation value for an inaccurately scheduled debt or one which they do not have to pay, potentially resulting in a windfall in the form of diminished payments to nonpriority unsecured claims.

Using the approach proposed by the Trustee and adopted by this Court, it would not matter if the priority unsecured claims were less than anticipated, as the liquidation value is calculated without consideration of priority debt and paid to the creditors who filed claims, in the same order as envisioned by 11 U.S.C. § 726, first to the allowed priority unsecured claims, and then to the allowed nonpriority unsecured claims. Any reduction in the amount of priority unsecured claims would lead to a corresponding increase in the amount paid to nonpriority unsecured claims.

**Below is a Memorandum Decision of the Court.**

The Court approves the Trustee's calculations for the liquidation value of the Debtors' estate.

WHEREFORE, the Trustee's Objection to Confirmation with Strict Compliance (ECF No. 21) is sustained, and the Trustee may upload an order sustaining the Trustee's Objection and providing the Debtors with 14 days to file a motion to confirm a plan that corrects the Debtors' liquidation value, or the Trustee may submit an ex parte order of dismissal.

///End of Order///